IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VIDYA SAGAR                            *
                                       *
            Plaintiff,                 *
                                       *
    v.                                 *          Civil No.: **PJM 10-3510**
                                       *
ORACLE CORPORATION                     *
                                       *
            Defendant.                 *
                                       *

## MEMORANDUM OPINION

*Pro se* Plaintiff Vidya Sagar has sued his former employer Defendant Oracle Corporation

(Oracle), alleging that his termination from employment violated the Age Discrimination in

Employment Act, 29 U.S.C. § 621, *et seq* (ADEA).  Oracle has filed a Motion for Summary

Judgment which Sagar opposes, and has filed his own Cross-Motion for Summary Judgment.

For the following reasons, the Court **GRANTS** Oracle's Motion and **DENIES** Sagar's Cross-

Motion.

## I.

In early 2005 Oracle acquired a corporation known as Peoplesoft.  Sagar was an

employee of Peoplesoft at the time of the acquisition.  Following the acquisition, Oracle offered

Sagar employment as a billable Consultant.  At the time Sagar was 58 years old.

Sagar worked under several different managers at Oracle until December 2006, when he

was assigned to a newly formed group at Oracle known as North American Strategic Accounts

(NASA).  Sagar continued on as a billable Consultant[1] in the new group until December 2007

when Oracle dissolved the group.  Around this same time Sagar was promoted to the status of

---

[1] A "billable employee" is one who is expected to attribute a certain percentage of his or her
working time to activities which can be directly billed to a client.

billable Project Manager.  After dissolution of the NASA group, Bradley Sachar, Senior Director of the Advanced Technology Services Group (ATS) at Oracle, offered Sagar a position within his group.  Sagar accepted and transferred into the ATS group in December 2007.  At the time Sagar was 60 years old.

During Sagar's employment with Oracle, as the national economy declined, Oracle found its business drastically reduced.  Between June 2008 and November 2009, the company conducted six rounds of layoffs, affecting over 730 employees.  When forced to choose people to terminate in the ATS group, Bradley Sachar decided to use each employee's "utilization rate" [2] for the two preceding quarters as the determining factor.  Since Sagar had the lowest utilization rates of all ATS group employees for the quarters measured (i.e., fourth quarter of FY2008 and first quarter of FY2009), on September 5, 2008, he was laid off.

The parties agree that prior to joining the ATS group Sagar was a billable employee expected to meet companywide utilization rate expectations. [3]  During this time Sagar received generally favorable performance evaluations and had utilization rates within ranges acceptable to his supervisors.  But Sagar also asserts that upon moving into the ATS group he was promoted from a billable Project Manager to Portfolio Manager, a non-billable position that had no minimum utilization rate expectations.  Oracle denies this and claims that Sagar was only hired into the ATS group as a billable Project Manager and remained such until his termination.

In support of his assertion that he was a non-billable Portfolio Manager as of the time of his termination, Sagar offers anecdotal evidence which demonstrates that he performed certain tasks which would normally be done by a Portfolio Manager.  While Oracle does not dispute

---

[2] The percentage of time an employee spends on "billable" activities is referred to as the "utilization rate."

[3] Oracle had and has a companywide expectation that all "billable" employees will maintain 75 percent utilization rates.

this, it claims that Sagar was assigned this work in order to give him gainful activity during a period when he was unable to find billable work to meet his utilization rate expectations. Oracle asserts that Sagar at all times remained a billable employee; was continuously told to seek out billable work; and was continuously aware that the position of Portfolio Manager remained open and that the company was actively seeking someone other than Sagar to fill the position permanently. In other words, Oracle says Sagar knew that he was *not* a Portfolio Manager and knew that he was still expected to maintain minimum utilization rates. Oracle offers substantial evidence in support of this assertion including personnel records, performance evaluations and emails. Many of these bear Sagar's acknowledgment that he remained a billable employee, discussing his utilization rate expectations.

Apart from this, Sagar claims that he was chosen for termination because of his age, and that Sachar sought to have a "young" team. He points out that Michelle Probst, age 59, was terminated around the same time as he was. He also claims that he "heard rumors" around the office that Oracle always fires people about 60 years of age. In particular, he cites an incident where Sachar "looked him up and down," allegedly to assess his overall health. Sagar claims that all of these events amount to proof that he was the victim of age discrimination.

Oracle denies that age had anything at all to do with Sagar's termination. It points out that Susan Curry, who is two years older than Sagar, was in fact retained by the ATS group and continues to work at Oracle to this day. Oracle also states that there were several legitimate nondiscriminatory reasons for terminating Sagar. In general the company was suffering a severe decline in business and was forced to implement a reduction in force. As a result, there was not a large pipeline of work for employees like Sagar, who had the lowest utilization rates in the entire ATS group. Furthermore, during both of his last two assignments, Sagar received

complaints from both customers and colleagues to the effect that he was difficult to work with. Oracle submits that these were the factors that led to the decision to terminate Sagar, not his age.

## II.

### A.

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court, however, must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. There must be sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986), and a "mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). When both

parties have moved for summary judgment, as is the case here, it does not "establish that there is no issue of fact and require judgment be granted to one side or another," but rather each motion should be evaluated independently. *World-Wide Rights Ltd. v. Combe Inc.*, 955 F.2d 242, 244 (4th Cir. 1992) (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214 (4th Cir. 1988)); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001); *and Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2nd Cir. 2001). This means that when the Court is reviewing Plaintiff's motion the facts are construed in the light most favorable to Defendant and vice versa.

A plaintiff proceeding *pro se* is held to a "'less stringent'" standard than is a lawyer, and the court must construe his claims liberally, no matter how "'inartfully pleaded.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, even a *pro se* plaintiff is not exempt from the requirement that his complaint contain more than mere "'labels and conclusions'" or "'a formulaic recitation of the elements of [a] cause of action.'" *Walden v. Allstate Ins. Co.*, 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**B.**

Sagar alleges age discrimination in violation of the ADEA.

Under the ADEA, it is unlawful for an employer to discharge an employee based on the employee's age, 29 U.S.C. § 623(a)(1) (1985). The circumstances must suggest that, but for the employer's motive to discriminate on this basis, the employee would not have suffered the adverse action. *Fink v. Western Elec. Co.,* 708 F.2d 909 (4th Cir. 1983). As plaintiff, Sagar has the burden of establishing the defendant's discriminatory intent for all of the claims, a burden which can be met either by direct evidence of discriminatory animus (*Goldberg v. B. Green &*

5

*Co.*, 836 F.2d 845, 848 (4th Cir.1988); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 233-34 (4th Cir. 1991)), or through the indirect burden-shifting proof scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (s*ee also Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir.2004) (applying *McDonnell Douglas* framework to ADEA claims)). Because he has offered no direct evidence of discriminatory animus, Sagar's claims are properly analyzed under the *McDonnell Douglas* framework.  *See Mereish*, 359 F.3d at 334.

Under *McDonnell Douglas*, to justify an inference of discrimination, the plaintiff must first establish a *prima facie* case of discrimination. *Id*. The central focus of the inquiry is whether the employer has treated some people less favorably than others because of a protected status, such as age or race. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977)).  More specifically, in order to establish a prima facie case in the context of reductions in force, the plaintiff must prove that: "(1) he was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual workforce including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing."  *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, which the employer may rebut by articulating a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The employer's burden is merely one of production, not persuasion. *Id.* at 255–56. If the

employer meets this burden, the presumption raised by the plaintiff's prima facie case is rebutted and the factual inquiry proceeds to a "new level of specificity." *Id*. at 255.

At that juncture, the plaintiff must prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id*. at 253; *see also Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989). To support a finding of pretext, a plaintiff must demonstrate that the employer's articulated reasons have no basis in fact or that its reasons were not the "real" reason for the adverse employment action. *See Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 931 (7th Cir.1996). "The plaintiff must establish that he was the better qualified candidate for the position" to meet his burden of proving that the company's explanation is pretextual and that he was the victim of intentional discrimination. *Evans v. Techs. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.1996).

The ultimate burden of showing that the employer intentionally discriminated against him remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253. Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413, 416–17 (4th Cir.1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

### III.

The Court finds, as a matter of law, that Sagar was not chosen for termination during a company-wide reduction in force because of his age.

### A.

Indeed, Sagar fails to make out even a *prima facie* case for age discrimination.  To repeat, in order to proceed with his claim, Sagar must show that: (1) he was protected by the ADEA; (2) he was discharged; (3) *at the time he was discharged* he was performing up to his employer's expectations; and (4) lower performing, substantially younger employees were retained.  *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000).  Sagar fails to satisfy the third and fourth prongs.

In choosing which employees to terminate during the reduction in force, Oracle evaluated the utilization rates of every employee for the previous two fiscal quarters (fourth quarter FY2008 and first quarter FY2009).  Not only were Sagar's utilization rates well below the company-wide expectation of seventy-five percent; his utilization rates were the lowest of all the billable employees in his group.  While Sagar does not contest these figures, he asserts that this manner of evaluation was unfair considering his "superb" performance *prior* to the evaluation periods in question. The Court is not persuaded.  It is well established that "in employment discrimination cases involving a reduction in force, it is not the court's duty to second guess the business judgment of defendant's employees and managers" or the manner in which the reduction in force is carried out.  *Conkwright v. Westinghouse Elec. Corp.*, 739 F.Supp. 1006, 1017-18 (D. Md. 1990), *aff'd*, 933 F.2d 231 (4th Cir. 1991).

Sagar also argues that he was a non-billable Portfolio Manager instead of a billable Project Manager, and as such, his utilization rates are irrelevant because non-billable Portfolio Managers are not expected to maintain minimum utilization rates.  In effect, he argues that he was performing up to employer expectations and was in fact replaced by a substantially younger Portfolio Manager, which, he submits, establishes a *prima facie* case.  However, Sagar offers nothing more than his own assertions and narratives to support the proposition that he was a non-

billable Portfolio Manager without utilization expectations.   Oracle, on the other hand, has submitted a plethora of direct and circumstantial evidence, including Sagar's own concessions, to show that Sagar was never promoted to Portfolio Manager, but at all times remained a Project Manager with utilization expectations.   In order to survive summary judgment Sagar must provide more than "naked opinions" and "conclusory assertions."   *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).   On this record, no trier of fact could reasonably conclude that Sagar was a Portfolio Manager.

## B.

Although enough has been said to deny Sagar's age discrimination claim without more, assuming *arguendo* that Sagar has established a *prima facie* case, Oracle cites several legitimate non-discriminatory reasons for his discharge, which Sagar has not adequately demonstrated to be pretextual or untrue.   Oracle has shown that Sagar was not highly utilized, since the pipeline of work for Project Managers was modest; that during his most recent projects both customers and coworkers complained that Sagar was difficult to work with; and that the company was experiencing a severe decline in business which necessitated a reduction in force.   Further undermining to Sagar's attempt to show pretext is the simple fact that, although he was 60 years of age at the time of his termination, Susan Curry, who was 62, was retained and continues to work for Oracle.   *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998) (holding that retaining employees comparable in age to the plaintiff weakened an inference of discrimination in employment termination case).   It is also noteworthy that Sagar was fifty-eight years old when Oracle hired him a mere two years earlier.   "Employers who knowingly hire workers within the protected group seldom will be credible targets for charges of pretextual firing."   *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir. 1994).   Firing a protected

employee a "relatively short time" after hiring him creates a strong inference against age discrimination. *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (considering two years a "relatively short time"); *see also Roberts v. Separators, Inc.*, 172 F.3d 448, 452 (7th Cir. 1999) (considering one year a "relatively short time").   Moreover, Sachar, the person who made the decision to terminate Sagar, was the very individual who less than a year prior had brought Sagar into the ATS group.  *See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) ("when the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer.").   It strains reason to conclude that Sachar would seek to bring a nearly sixty year old man onto his team only to discriminate against him in pursuit of a "younger" workforce a few months later.   Sagar's claim of age discrimination cannot stand.

## IV.

For the foregoing reasons, the Court **GRANTS** Oracle Corporation's Motion for Summary Judgment [Paper No. 79], and **DENIES** Vidya Sagar's Motion for Summary Judgment [Paper No. 146]. Final Judgment will be entered in favor of Defendants and against Plaintiff.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

November 26, 2012